OPINION OF THE COURT
Jasen, J.
In this declaratory judgment action, the question posed for our consideration is whether property owned by a religious and charitable organization and leased to another charitable organization is subject to taxation if the rental income derived from such property exceeds the carrying, maintenance and depreciation charges thereon, even if the property is used exclusively for tax-exempt purposes by the lessee thereof. To resolve this issue, we are required to construe the statutory language embodied in subdivision 2 of section 421 of the Real Property Tax Law.
Plaintiff Sisters of Saint Joseph, a Roman Catholic order of nuns, owns certain property located on St. Marks Avenue in Brooklyn, New York. The property is improved by a three-story brick building and was used by plaintiff as a convent until 1973. While used as a convent, the property was granted tax-exempt status.
In August of 1973, plaintiff leased the subject premises to Catholic Charities of the Diocese of Brooklyn for a period of five years. The lease provided that the premises were to be used as a senior citizens’ center, that Catholic Charities was not obligated to pay rent, and that any improvements to the building were to become the property of plaintiff. Catholic Charities, like plaintiff, is a nonprofit corporation engaged in charitable activities.
Thereafter, in February, 1974, Catholic Charities sublet the property, with minor exceptions, to the Builders for the Family and Youth of the Diocese of Brooklyn (Builders), a tax-exempt corporation funded through various governmental agencies, for a five-year term, with an option for an additional five-year period.[1] The sublease required that Catholic Charities *435 convert the building into a senior citizens’ center, and, further, provided for an annual rental of $24,000 to be paid by Builders to Catholic Charities. These rental payments did not, however, inure to the benefit of plaintiff Sisters of St. Joseph.
The subject property, which had been fully exempt from real property taxation through the 1974-1975 tax year, was restored to the real property tax roll of the City of New York for the tax years commencing with 1975-1976. Plaintiff then applied to defendant City of New York Tax Commission (Commission) for an exemption. Following a hearing, the Commission, although stating that it was satisfied that plaintiff, Catholic Charities, and Builders are all religious and charitable organizations within the meaning of section 421 (subd 1, par [a]) of the Real Property Tax Law[2] and that the property is being used for religious and charitable purposes, nevertheless denied plaintiff’s application for an exemption. It reasoned that pursuant to subdivision 2 of section 421 of the Real Property Tax Law, property leased by one exempt organization to another remains exempt only so long as the rental proceeds do not exceed the carrying, maintenance and depreciation charges of the property.[3] Although plaintiff had submit *436 ted a statement of expenses indicating that such expenses approached or exceeded the rental proceeds, the Commission determined that certain of the expenses were improperly included or inflated. Finding that the moneys received by Catholic Charities did, in fact, exceed the actual costs permitted by statute and, thus, constituted a pecuniary gain, the Commission held that the property was properly taxable.
Thereafter, plaintiff instituted the instant action seeking a declaration that the taxes assessed and levied against the property are null and void. Plaintiff challenged both the Commission’s computation of allowable expenses and the construction afforded subdivision 2 of section 421 of the Real Property Tax Law by that agency.
Special Term granted plaintiff’s motion for summary judgment, declaring that the qualification embodied in subdivision 2 of section 421 — that rental income shall not exceed the expenses — is totally inapplicable in a case where, as here, the premises are being used by a tax-exempt organization for concededly tax-exempt purposes. In light of its disposition, Special Term did not reach plaintiff’s other contention, to wit: that its account of expenses was proper and that the expenses exceeded the rental income.
On appeal, a unanimous Appellate Division affirmed, stating that "[t]he Tax Commission’s determination that the organizations involved with the property 'are all religious and charitable organizations as contemplated by Section 421(l)(a) of the Real Property Tax Law [and] that the property in question is being used for carrying out thereupon such religious and charitable purposes’, rules out the applicability of subdivision 2 of section 421 of the Real Property Tax Law.” (66 AD2d, at p 886.) Leave to appeal was granted by this court. We now reverse, in part, and remit this matter to Supreme Court, Kings County, for a hearing on the issue whether the carrying, maintenance and depreciation charges of the property exceeded the rental income.
To resolve the issue presented — namely, whether property owned by one charitable organization and leased to another *437 charitable organization is subject to real property taxation if the rental income derived from such property exceeds the carrying, maintenance and depreciation charges thereon — it is helpful to trace the historical evolution of the statutes granting tax-exempt status to charitable organizations.
It has long been the public policy of this State to exempt property owned by religious and charitable organizations from taxation. As early as 1799, the law providing for the assessment and collection of taxes upon real and personal property contained the following exemption: "That no house or land belonging to the United States, or to the people of this State, nor any church or place of public worship, or any personal property belonging to any ordained minister of the gospel, nor any college or incorporated academy, nor any school house, court house, gaol, alms house or property belonging to any incorporated library, shall be taxed by virtue of this act.” (L 1799, ch 72.) This exemption remained substantially intact in subsequent legislative enactments (see L 1801, ch 179; L 1823, ch 262) and survived the amalgamation of these statutes. (Rev Stat of NY [1829], vol 1, ch 13, tit 1, § 4.)
In 1893, the statutory exemptions relating to property owned by a charitable organization and used for charitable purposes began to take a form similar to that now found in section 421 of the Real Property Tax Law. Chapter 498 of the Laws of 1893 provided, in pertinent part: "The real property of a corporation or association organized exclusively for the moral and mental improvement of men and women or for religious, charitable, missionary, hospital, educational, patriotic, historical or cemetery purposes, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes shall be exempt from taxation. * * * The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes, but leased or otherwise used for other purposes shall not be so exempt”. This language remained substantially unchanged when the Tax Law was codified (L 1896, ch 908) and was set forth in subdivision 7 of section 4 of that law.
Although this statutory section was amended on many subsequent occasions and subdivision 7 was renumbered as subdivision 6 in 1933 (L 1933, ch 470), the relevant language of this statutory provision remained virtually unchanged until 1948. During that period, the courts of this State construed the qualifying phrase "leased or otherwise used for other *438 purposes” to mean "used for purposes other than, specifically, those of the owning corporation.” Thus, an exemption was denied where a religious or educational corporation leased its property to another religious or educational corporation, even if the property was being used by the lessee thereof for an exempt purpose and the rent was being applied to further the objectives of the owner-lessor. (See, e.g., People ex rel. Unity Cong. Soc. of City of N. Y. v Mills, 189 Misc 774; People ex rel. Frick Collection v Chambers, 196 Misc 1026, affd 276 App Div 891.)[4]
In obvious response to this judicial interpretation (see NY Legis Ann, 1948, pp 291-293), an amendment was proposed and adopted to permit a tax-exempt organization to lease its property to another tax-exempt corporation and still retain the exemption. (L 1948, ch 622.) As far as is pertinent to this case, the amendment added the following language to subdivision 6 of section 4 of the Tax Law: "[Pjrovided, however, that the real property of any such corporation shall be fully exempt, whether such property is used by the corporation itself for the purpose or purposes for which it was organized, or whether such property is used by another exempt corporation for purposes which are exempt under this subdivision, as long as the property is devoted to exempt uses and as long as any moneys paid to the owning corporation by the using corporation do not exceed the amount of the carrying, maintenance and depreciation charges of the property”. (Id.) This qualification was explained in a memorandum submitted in support of the then proposed amendment as follows: "The limitation requiring the owning corporation not to receive more than its carrying, maintenance and depreciation charges is intended to assure that the statute cannot in any way be used to provide a profit even for tax exempt corporations.” (See NY Legis Ann, 1948, p 293.)
Thus, it appears clear that this statutory qualification that proceeds received from the property should not exceed specified charges on the property was intended to apply where, as in this case, tax-exempt organizations leased their property to other exempt organizations. The courts of this State construed the above-cited language as such. (See Masters School v Town of Greenburgh, 140 NYS2d 399; cf. Matter of Pace Coll. v *439 Boyland, 4 NY2d 528, 532 ["subdivision 6 of section 4 of the Tax Law withholds exemption from * * * benevolent corporations to the extent that their properties are leased for other purposes (except under certain circumstances to a similarly exempt corporation)” (emphasis supplied)].)
Former subdivision 6 of section 4 of the Tax Law, for purposes relevant here, remained virtually unchanged until 1958, at which time the Real Property Tax Law was enacted. (L 1958, ch 959.) However, the qualification concerning leases of property owned by a tax-exempt corporation was retained and included in subdivision 2 of section 420 of the new law, and is identical to that now embodied in subdivision 2 of section 421 of the Real Property Tax Law.
Despite the difference in wording between former section 4 of the Tax Law and article 4 of the Real Property Tax Law, it is clear that no substantive change was intended. As stated by then Governor Harriman at the time of the recodification: "The new code is the product of years of effort on the part of the legal staff of the State Board of Equalization and Assessment and of an Assessment Advisory Committee to that Board. * * * It is hoped that the new code will serve as an impetus for reform in the substantive provisions governing real property taxation. The Board of Equalization and Assessment has contended itself with recodiñcation and the making of some procedural changes in existing laws.” (NY Legis Ann, 1958, p 496 [emphasis supplied]; see Real Property Tax Law, § 2002, subd 6 ["(t)he repeal by this chapter of section four of the tax law * * * and the re-enactment of the provisions thereof in article four of this chapter (is) intended to effectuate a continuation and restatement, without change in substance or effect, of the provisions of such laws.”].)
Accordingly, we conclude that the Legislature intended the provision in subdivision 2 of section 421 of the Real Property Tax Law — requiring that rental income not exceed specified expenses of the property — to be applicable in a situation where one tax-exempt corporation leases its property to another, even though the latter organization uses the property for what could be deemed charitable purposes. As demonstrated, subdivision 6 of section 4 of the Tax Law was so judicially interpreted, and inasmuch as the applicable provision of the Real Property Tax Law represents a codification of previously existing law, we find no reason to deviate from that prior construction. Indeed, the qualifying phrase "so long as *440 any moneys paid for such use do not exceed the amount of the carrying, maintenance and depreciation charges of the property” as now contained in subdivision 2 of section 421 of the Real Property Tax Law has been so construed. (See Matter of St. Michael’s Protestant Episcopal Church v Kaplan, NYLJ, Feb. 17, 1977, p 10, cols 4-5 [Supreme Ct, NY County]; see, also, Curtiss, Tax Exemption of Educational Property in New York, 52 Cornell LQ 551, 566.)
Moreover, even without the benefit of this legislative history, we would construe the very language of subdivision 2 of section 421 of the Real Property Tax Law as being specifically applicable where one tax-exempt organization leases its property to another. This section begins with the following language: "If any portion of such real property is not so used exclusively [by the owner-organization] to carry out thereupon one or more of such [tax-exempt] purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation and the remaining portion only shall be exempt.” (Emphasis supplied.) It must be stressed that this opening language is phrased in the disjunctive; thus, two occurrences could possibly serve as the grounds for disqualification: (a) that the property is leased; or (b) that the property is used by the owner-organization for other than tax-exempt purposes.
The courts below, however, construed this introductory language as making the entire subdivision inapplicable where one tax-exempt organization leases its premises to another such organization and the property is used by the lessee thereof for tax-exempt purposes. Such an interpretation not only ignores the plain wording of the statute, but, in addition, renders meaningless the balance of the subdivision which contains provisions specifically exempting leased property where it is used "for purposes which are exempt pursuant to this section [Real Property Tax Law, § 421] * * * by another [tax-exempt] corporation * * * provided * * * that such real property shall be exempt from taxation only * * * so long as any moneys paid for such use do not exceed the amount of the carrying, maintenance and depreciation charges of the property”. Clearly, the Legislature could not have intended such a result.
Plaintiff maintains, however, that even if this court concludes, as we now do, that subdivision 2 of section 421 of the Real Property Tax Law is specifically applicable to a situation *441 where one tax-exempt organization leases its property to another for use by the latter for tax-exempt purposes, and, thus, rental income may not exceed the amount of the carrying, maintenance and depreciation charges of the property in order to qualify for an exemption, it is nevertheless entitled to an exemption because Catholic Charities, and not plaintiff, is the recipient of the rental payments. We cannot agree.
While it may appear harsh to hold an owner liable for real property taxes when it derives no pecuniary benefits from the demised premises, this result is mandated in this case, for a contrary holding would allow a tax-exempt organization in the future to lease its property to another tax-exempt organization with the expectancy that such organization would sublease the property and obtain a profit from the rental proceeds. This court will not construe subdivision 2 of section 421 of the Real Property Tax Law in such a manner as to establish a tax loophole, for the Legislature could not have intended its express mandate to be so easily circumvented.
This is not to say, or even intimate, that plaintiff harbored an intent to escape tax liability by employing such tactical maneuvers, for a review of the record supports a contrary conclusion. However, this court simply cannot consider this a factor in our decision, for submission to what one may consider an appealing factual situation often results in the establishment of an unsound rule of law. In addition, it should be noted that the lease between plaintiff and Catholic Charities expressly provided that the latter “shall not assign or sublet the demised premises, or any part thereof, without the written consent of [plaintiff].” Thus, plaintiff retained control over the premises, and could have refused to give its consent to the subletting of the property given the proposed terms of the lease, thereby maintaining the tax-exempt status of the property.
 One further point requires comment. Plaintiff contends that if subdivision 2 of section 421 of the Real Property Tax Law is construed as imposing upon it tax liability, the statute, as applied, should be declared unconstitutional. Plaintiff maintains that the statute would violate its right to exercise freely its religion (US Const, 1st Amdt; NY Const, art I, § 3), and also would run counter to the express constitutional mandate that tax “[e]xemptions may be altered or repealed except those exempting real or personal property used exclusively for religious, educational or charitable pur *442 poses as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit.” (NY Const, art XVI, § 1.) We find these arguments unpersuasive.
The imposition of real property taxes, under the circumstances of this case, simply does not infringe upon plaintiff’s right to practice freely its religion. Plaintiff does not now contend, nor could it, that the taxation of its real property, leased to another, in any way prevents plaintiff from freely and openly exercising its religious beliefs. Indeed, the very existence of the lease itself militates against a finding that the property in question was to be used for the practice of plaintiff’s religion.
Plaintiff’s remaining contention — that subdivision 2 of section 421 of the Real Property Tax Law works to repeal a tax exemption to which plaintiff is constitutionally entitled (NY Const, art XVI, § 1) — cannot withstand analysis. As previously noted, when section 1 of article XVI of the New York Constitution became effective in January of 1939, the applicable tax statutes as interpreted by the courts of this State did not allow for an exemption where a tax-exempt organization leased its property to another such organization. Thus, subdivision 2 of section 421 of the Real Property Tax Law works to bestow upon tax-exempt organizations an additional benefit which is not constitutionally mandated. Therefore, it is inconceivable that the Legislature, having granted an additional benefit, is without the power to restrict that benefit without offending the State Constitution.
For the reasons stated, the order of the Appellate Division should be modified, and the case remitted to Supreme Court, Kings County, for a hearing in accordance with this opinion, and, as so modified, is affirmed.

. The sublease was later amended by agreement to commence on April 1, 1974, and to run for a five-year period therefrom.

. Section 421 (subd 1, par [a]) of the Real Property Tax Law provides: "Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section.”

. Section 421 (subd 2) of the Real Property Tax Law states: "If any portion of such real property is not so used exclusively to carry out thereupon one or more of such purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation and the remaining portion only shall be exempt; provided, however, that such real property shall be fully exempt from taxation although it or a portion thereof is used (a) for purposes which are exempt pursuant to this section or sections four hundred twenty-two, four hundred twenty-four, four hundred twenty-six, four hundred twenty-eight [footnote omitted] four hundred thirty or four hundred fifty of this chapter by another corporation which owns real property exempt from taxation pursuant to such sections or whose real property if it owned any would be exempt from taxation pursuant to such sections, (b) for purposes which are exempt pursuant to section four hundred eight of this chapter by a corporation which owns real property exempt from taxation pursuant to such section or if it owned any would be exempt from taxation pursuant to such section, (c) for purposes which are exempt pursuant to section four hundred sixteen of this chapter by an organization which owns real property exempt from taxation pursuant to such section or whose real property if it owned any would be exempt from taxation pursuant to such section or (d) for purposes relating to civil defense pursuant to the New York state defense emergency act, including but not limited to activities in preparation for anticipated *436 attack, during attack, or following attack or false warning thereof, or in connection with drill or test ordered or directed by civil defense authorities; and provided further that such real property shall be exempt from taxation only so long as it or a portion thereof, as the case may be, is devoted to such exempt purposes and so long as any moneys paid for such use do not exceed the amount of the carrying, maintenance and depreciation charges of the property or portion thereof, as the case may be.”

. The Tax Department of the City of New York also construed the law as requiring that the exempt corporation itself use the premises in order to qualify for an exemption. (See NY Legis Ann, 1948, p 291.)