OPINION OF THE COURT
Jan H. Plumadore, J.
*414 This CPLR article 78 matter is before the court due to respondents’ refusal to grant petitioner tax-exempt status under RPTL 420-a for the 2002 and 2003 tax years. Both sides move for summary judgment. The following material facts are not in dispute and therefore constitute the factual findings of the court.
Factual Findings
1. Petitioner was incorporated on August 31, 2000 as a type C corporation as defined in section 201 (b) of the Not-For-Profit Corporation Law (“any lawful business purpose to achieve a lawful public or quasi-public objective”). It was formed to avail St. Lawrence County of significant cost savings that resulted from: (a) the ability to include the occupation cost (i.e., rent) as a reimbursable expense from the State; (b) the fact that the lease obligation is subject to annual appropriation; (c) the project being developed on a design/build basis which apparently could not have been done on a direct municipal project;* and (d) financing the project through tax-exempt bonds. The final cost of the building was approximately $1.3 million less than the architect’s estimate of the cost of a comparable building built as a public works project.
2. The certificate of incorporation specifies its purposes as:
“third
“(a) The development, construction and leasing of a modern human services center to replace the overcrowded and antiquated offices of the County Health Department and other County offices, which new facility will provide one modern facility to house a collection of human services providers including the departments of mental health, public health, veterans services, youth services and office for the aging, will be funded with tax exempt financing, will be leased to the County for a period of 30 years and will become the property of the Village of Canton or the Town of Canton thereafter without any payment or consideration paid;
“(b) The leasing of the facility for the utilization by departments of said County providing administrative services to several agencies, public and private, in said County, engaged in the provision of health related and human services to the residents thereof;
*415 and
“(c) To meet the public objective to provide an appropriate environment for the various County agencies to offer health and human services in one facility, which facility will not create a capital burden on the County, will be provided through a lease subject to annual appropriation by the County and which will become the property of the Village of Canton or the Town of Canton for use by it or the County at the end of the County lease;
“(d) To reduce the cost of the facility through the utilization of tax exempt financing which will decrease the cost of the delivery of human services in the County and will increase the capabilities of the various County departments; and “(e) To do any other act or thing incidental to or connected with the foregoing purposes or in advancement thereof.
“fourth: Notwithstanding any other provision of these articles, the Corporation is organized exclusively for one or more of the purposes as specified in Section 501 (c) (3) of the Internal Revenue Code.”
3. In July of 2001 the Internal Revenue Service (petitioner’s exhibit E) determined it to be a “publicly supported organization described in sections (IRC) 509 (a) (1) and 170 (b) (1) (A) (vi)” via 26 USC § 501 (c) (3), to wit:
26 USC § 501 (c) provides that a publicly supported organization includes: “(3) Corporations,. . . organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes,... or for the prevention of cruelly to children or animals.”
26 USC § 170 (b) (1) (A) provides:
“(vi) an organization referred to in subsection (c)(2) which normally receives a substantial part of its support (exclusive of income received in the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 (a) from a governmental unit referred to in subsection (c)(1) or from direct or indirect contributions from the general public.”
26 USC § 170 (c) provides: “Charitable contribution defined.— For purposes of this section, the term ‘charitable contribution’ means a contribution or gift to or for the use of—
“(1) A State, a possession of the United States, or *416 any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.
“(2) A corporation, . . .
“(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;
“(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, ... or for the prevention of cruelty to children or animals.”
4. In February 2003 the New York State Attorney General’s Office recognized petitioner as organized for charitable purposes via the registration requirements of EPTL 8-1.4. (Petitioner’s exhibit G.)
5. Petitioner’s initial board of directors consists of the County Administrator (who is also the secretary-treasurer), the executive director of the St. Lawrence Aquarium and Ecological Center (also petitioner’s president), the executive director of Cornell Cooperative Extension of St. Lawrence County, the president of a private commercial concern and the superintendent of the Canton School District.
6. The County Board “hires and fires” petitioner’s board (bylaws, art II, § 2.2). It also fills vacancies unless, via the County Administrator, it fails to notify petitioner’s board of the name of the replacement within 90 days (§ 2.4 [b]). That notwithstanding, the County Board has the power to “terminate the tenure” of any and all of petitioner’s directors with or without cause (§ 2.4 [a]).
7. In the event of dissolution, all remaining assets and property of the corporation, after necessary expenses, become the property of the Village of Canton (certificate art VI; bylaws 1Í ninth), since the Village’s approving resolution superseded the Town’s (petitioner’s exhibits B, A, respectively, dated Apr. 19, 2001, and Apr. 3, 2001).
8. Both resolutions
“hereby determined to be necessary and proper to ratify (and approve) the creation of the Corporation (Petitioner) as a charitable, non-profit corporation to act on behalf of the Village (or Town) for the purpose of acquiring and constructing the Project, *417 and providing the financing thereof, to be conveyed to the Village (or Town) . . . upon the repayment of the Project financing.” (Village resolution § 1; Town resolution § 1 [emphasis supplied].)
9. In each resolution’s second whereas clause, the corporate formation was approved as aforesaid as “in the best interest” of each municipality; also recited as in the best interest of each was “cooperation] with St. Lawrence County in the provision of appropriate space for delivery of County health services.”
10. It was stipulated that the rent paid to petitioner by the County did not exceed expenses and debt service — a situation precluded by petitioner’s nonprofit/charitable status in any event (see also petitioner’s exhibit H).
11. Once petitioner had been formed by the County on August 31, 2000, the latter acquired options on and later the subject parcel itself in the fall of 2000. The first meeting with Town and Village officials concerning the project was held in January 2001, i.e., well before the approving resolutions. At that meeting local officials inquired as to any proposed or anticipated tax status of the building; the issue, obviously, was not resolved. On June 13, 2001, petitioner leased the property to St. Lawrence County in accordance with its certificate of incorporation, bylaws and both the Town and Village’s approving resolutions’ acknowledgment of petitioner’s corporate purposes as set forth in its certificate of incorporation. In addition, the Village’s resolution also includes language that petitioner submit to it prior to closing all funding (bond) documents and all final forms of, among other things, the lease agreement (fifth whereas clause, petitioner’s exhibit B, supra).
12. It was also stipulated, as a matter of both fact and law, that had the County built the facility itself on land that it owned within the County, as this parcel certainly is, it would be exempt from real property taxation under RPTL 406, i.e., it is used for public benefit.
Decision
Exemption-from-real-property-taxation and “charitable organization” (or municipal corporation) are not synonymous. The RPTL is replete with distinctions: municipal real property not held for public use, real property owned by a charitable, educational, hospital, etc., organization not used principally or primarily (Mohonk Trust v Board of Assessors of Town of Gardiner, 47 NY2d 476, 483 [1979]) “for carrying out there *418 upon one or more of such purposes” (RPTL 420-a [1] [a]) are not tax exempt.
Respondents argue that leasing real property which would otherwise qualify prohibits an exemption here, relying principally on Columbia County Mental Retardation Realty Co. v Palen (97 Misc 2d 9 [1978]) and Sisters of St. Joseph v City of New York (49 NY2d 429 [1980]). Reliance on Palen would be problematic as the Court of Appeals has expressly declined to follow it.
Sisters of St. Joseph, the other case primarily relied on by respondents, involved a lease by one Catholic nonprofit to another for $0 rent. One year later that organization sublet it to another Catholic organization for five years for an annual rent of $24,000. Special Term reversed the Tax Commission and granted the exemption, the Appellate Division affirmed and the Court of Appeals reversed and remanded the matter to Special Term for a hearing on “whether the carrying, maintenance and depreciation charges . . . exceeded the rental income” (Sisters, supra at 436), an issue not reached by Special Term originally. Sisters was not treated by the Court of Appeals in Matter of St. Joseph’s Health Ctr. Props, v Srogi (51 NY2d 127 [1980]), nor apparently cited to it, and its holding regarding amount of rent versus carrying, etc., charges has been stipulated out of the instant case (findings of fact No. 10).
In Matter of St. Joseph’s Health Ctr. Props. v Srogi (51 NY2d 127 [1980]), the Court refused to disallow exemptions in all “alternate owner” situations. It opined that the court in Palen (supra at 134) was influenced by the substantial annual rent ($48,000) paid by the Columbia County Chapter of the New York State Association for Retarded Children, Inc. to the petitioner therein, a not-for-profit corporation formed solely and exclusively to hold title to the lessee’s real and personal property. It also noted that the cases the Palen court relied on all dealt with a statute which then related “exemption to ownership by the exempt corporation rather than ownership by a corporation ‘organized or conducted’ for an exempt purpose” (id. at 134 n 7) as was the case there (Srogi) and here.
Srogi involved a related type B corporation organized in part to build and provide housing for staff personnel of a separate hospital corporation on land the former owned. The petitioner’s/ related corporation’s corporate purposes were:
“ •‘To receive and pay over monies to St. Joseph’s Hospital Health Center for its corporate purposes’ and ‘to carry out such programs, research or activi *419 ties as may be necessary or desirable to further the corporate interests of St. Joseph’s Hospital Health Center’ and limit Properties’ purposes ‘to those which are strictly scientific, educational and charitable as more specifically described above.’ . . . Paragraph 7 of the certificate also requires that there be not less than three nor more than nine directors ‘all of whom shall be members of the Board of Trustees of St. Joseph’s Hospital Health Center and they shall be designated at the Annual Meeting by the President of St. Joseph’s Hospital Health Center’ ” (id. at 130).
The properties in question there were adjacent to the hospital and its school of nursing; they were used exclusively to house hospital personnel, which made it possible to attract desirable personnel from outside the area; the rents were nominal; the properties were managed by the hospital’s director of special services and security and were maintained by the hospital to which the rents were turned over and which paid for all utilities and maintenance of the properties. Note the similarities with Canton Human Services Initiatives: a broader corporate, charitable purpose than simply being a realty holding corporation (our findings of fact Nos. 1, 2, 8, 9), complete control of the board of directors by the “parent” corporation (our findings of fact No. 6), rents were nominal and funded, there, utilities and maintenance, here, expenses and debt service (findings of fact No. 10), key findings in both Sisters (supra), and Symphony Space v Tishelman (60 NY2d 33 [1983]), as well.
Srogi affirms an exemption for corporations which are alter egos of another whose properties would be exempt if owned — if the alter ego is conducted for an exempt purpose “ ‘ “reasonably incident” to the major purpose of the hospital’ ” (id. at 131, citing Matter of St. Luke’s Hosp. v Boyland, 12 NY2d 135, 143 [1962]). The exemption cannot be denied for an exempt use by the alter ego just because the alter ego “is not itself empowered to carry out all of the functions of the exempt purpose” (Srogi at 133).
In Srogi, the petitioner corporation was empowered to carry out some of the hospital’s exempt functions; in the instance case Canton Human Services Initiatives is empowered to carry out some of St. Lawrence County’s public benefit use functions/ purposes: facilitation of the delivery of health and human services via funding alternatives, construction and leasing of a new, modern facility exclusively to house the County’s health *420 and human services agencies (findings of fact Nos. 2, 8, 9). Possibly unique at least in the history of contested exemptions, the formation of this governmental alter ego was approved and encouraged by the taxing authorities.
Is petitioner a charitable organization in its own right? While it was formed as a type C and the case law typically involves type B, the federal, state, town and village authorities have all referred to it as a charitable corporation (findings of fact Nos. 3, 4, 8, 9). Organizations can be considered charitable when their purpose is to lessen the burden on taxpayers by providing what is otherwise a governmental function (Sherman v Richmond Hose Co. No. 2, 230 NY 462 [1921]; Matter of American Socy. for Prevention of Cruelty to Animals v Tax Commn. of City of N.Y., 113 Misc 2d 427 [1981]), here accomplished by providing a building to house county health and human services agencies far more cheaply than if St. Lawrence County had just built it itself on the parcel it deeded to petitioner, which building becomes Canton Village’s property in 28 years unless petitioner sooner dissolves (findings of fact Nos. 1, 2, 7, 8, 9). The latter facts do not aid petitioner though for it cannot receive the exemption a remainderman would be entitled to if in possession (see Board of Educ. v Board of Assessors, 54 AD2d 978 [1976]).
The form the organization takes is not crucial (Mohonk, supra [approving a charitable trust for exemption]), i.e., the fact that petitioner organized as a type C corporation is not determinative. Neither is the type of charitable, educational, etc., activity. “While exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, an interpretation so literal and narrow that it defeats the exemption’s settled purpose is to be avoided” (Symphony, supra at 36). “[P]roperty used primarily for various and varied charitable and educational purposes and the moral or mental improvement of the citizenry” (Symphony at 37; Mohonk, supra at 484) may receive the exemption “rather than dissecting each exempt purpose” (id. at 37).
In both Symphony and Mohonk, “lands used ‘primarily for an assortment of “charitable . . . educational, [and] moral improvement of men, women or children” purposes’ ” (id. at 37) were entitled to the (now) section 420-a (1) exemption, the former for allowing free rehearsal time and use of its facilities by neighborhood groups and theater and dance companies, the latter for preserving wilderness areas for the benefit of the public while permitting and encouraging ecologically responsible recreational and educational use thereof.
*421 Petitioner is not a realty company (Palen), nor is it a traditional charity which happens to be leasing its real property to another one (Sisters). What it is is the alter ego of St. Lawrence County (Srogi) formed with the consent of two other municipal corporations (one of whom has the sole remainder interest in its assets, including the subject parcel and building), which, together with the three units of government involved and approving, utilized a leasing arrangement to secure favorable funding to facilitate the delivery of health and human services (charitable endeavors in their own right) to the citizens of St. Lawrence County and save tax dollars in/via the process. This court holds therefor that petitioner is a charitable organization and thus entitled to an exemption under RPTL 420-a (1).
The mere fact that it leased the property does not defeat it. Respondents are correct, fortified as they were by opinion letters from the New York State Board of Real Property Services, in observing that the County does not qualify as an “exempt lessee” under section 420-a (2) as its normal ownership exemption (§ 406) is not one of those enumerated. That fact is not controlling however.
The property is being leased to the County precisely because the lease is one of, critical to, and in furtherance of the other purposes of incorporation. It is not being used as an investment nor to generate revenue (see Matter of Pace Coll. v Boyland, 4 NY2d 528 [1958]; Scenic Hudson Land Trust v Sarvis, 234 AD2d 301 [1996]). Without the lease, which was required in order to obtain the favorable funding which permitted all three municipal governments to move forward with the project, improve the delivery of health and human services to County residents and give the Village of Canton a valuable remainder interest, there would be no reason for petitioner’s existence, charitable or otherwise.
Judge Gabrielli, dissenting from the result in Sisters (supra), which presaged holding the owner Catholic organization liable for taxes based on apparently profitable rent received by the Catholic lessee from the Catholic sublessee, observed that “[i]t is only property which is ‘leased or otherwise used for other purposes’ which may not be entitled to the exemption if it falls within the ambit of subdivision 1” (Sisters at 444; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [regarding construing “otherwise” and “other”]).
Real property was not being leased for other purposes in Scenic Hudson and Pace Coll., but in furtherance of them. In Pace, *422 particularly, leasing cafeteria functions to a private contractor was held part of the operation of the college and under its general supervision and control and thus not the prohibited “other purposes.” This is even more true herein: the lease requirement was in the incorporation papers, known to and approved by three municipal corporations and the state and federal governments, and was but a prerequisite to securing the type of tax-exempt bond project funding which has saved the taxpayers money.
RPTL 420-a (2) was recently amended (L 2003, ch 534, § 1) to extend to nonprofit organizations the same exemption when they lease to other municipal corporations that they received when they leased to school districts. This amendment is not dis-positive given the within analysis, i.e., the fact that that is the law now does not mean there was no other way to accomplish the same result under existing law.
Petitioner’s motion for summary judgment is granted; respondent’s cross motion denied.

 This finding was stipulated.