Yah Voobhis, J.
Subdivision 6 of section 4 of the Tax Law exempts from the general property tax the real property of a corporation or association organized exclusively for educational or other benevolent purposes, provided that the property is used by it exclusively for such purposes. This section further provides: “ The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion, shall be subject to taxation ”.
Petitioner-appellant Pace College’s property consists of a 16-story office building at 41 Park Bow, opposite City Hall Park, in the borough of Manhattan, New York City. It has been converted into a building suitable for educational purposes in which space was set aside for use as a cafeteria. There is a student enrollment of 3,800, a faculty of 140 members and a *531 staff of 129. The use of this cafeteria is restricted to the students, faculty and staff. A uniformed guard employed by the school has the duty of preventing other persons from using this facility, assisted by a sign on the door stating that the cafeteria is not open to the public. Pace College purchased and installed the cafeteria equipment (including gas, steam and electric cooking facilities) at a cost of $35,000. It was thought to be too expensive for the college to operate this cafeteria directly, consequently in September, 1953, it entered into a contract with a food service management and consultant firm providing that the college would furnish equipment, gas, electricity and water and that the firm would pay to the college 2% of the gross receipts monthly, and that net operating profits at the end of a year would be divided equally between the college and the firm. While this arrangement was in effect, this entire building of Pace College was treated as exempt by the Tax Commission of the city. This mode of operation proved to be unsatisfactory to the college, so that effective January 1, 1955, it entered into an agreement with a chain restaurant corporation known as Horn & Hardart to operate the cafeteria. No rent or other remuneration was to be paid to Pace College by Horn & Hardart, which would retain the profit or stand the loss from operations; the arrangement was to continue for five or six months on an informal or tentative basis, and then at will. The college, as before, was to furnish equipment, gas, electricity and water, scrub and wax the floors in the dining-room area once every two weeks, and Horn & Hardart would provide all of the personnel, assume responsibility for garbage disposal and liability insurance and serve food similar in variety and quality to that served in their automats at comparable prices. It was contemplated that after a test period the financial relationship would be re-examined and formalized, and, if it were found that Horn & Hardart were making what Pace College regarded as an undue profit, some different arrangement would be made. No major changes have been made in this agreement which has been carried into effect.
Due to this method of operating the college cafeteria, Pace College was notified by the Tax Commission of the City of New York on March 2, 1955 that $50,000 of the previous tax *532 exemption had been withdrawn from its building. This proceeding has been instituted by the college for the restoration of this portion of its tax exemption, so that its building at 41 Park Row may in the future be entirely exempt as it was before the operation of its cafeteria through Horn & Hardart began.
A final order sustaining the Tax Commission’s position was entered by the Official Referee, which was affirmed by the Apellate Division. Leave to appeal was granted by this court. We think that Pace College is entitled to complete tax exemption. It is true that subdivision 6 of section 4 of the Tax Law withholds exemption from educational or other benevolent corporations to the extent that their properties are leased for other purposes (except under certain circumstances to a similarly exempt organization), but that is not this case. This is not an instance where property has been leased for other than the purposes of incorporation of the lessor (e.g. People ex rel. Frick Collection v. Chambers, 196 Misc. 1026, affd. 276 App. Div. 891). This cafeteria is not being used by the public paying a revenue to the college as in the case of the restaurant in Young Women’s Christian Assn. v. City of New York (217 App. Div. 406, affd. 245 N. Y. 562), nor was the property otherwise held as an investment as in People ex rel. Young Men’s Assn. v. Sayles (32 App. Div. 197, affd. 157 N. Y. 677). The situation is different from that in People ex rel. Adelphi Coll. v. Wells (97 App. Div. 312, affd. 180 N Y. 534), where a college athletic field, which the court said would be exempt if used by the college, was held to be taxable for the reason that it was also “ utilized as a source of pecuniary income by renting it to outside parties for contests in which the Adelphi College students do not participate and over which the college officers have no control ” (97 App. Div. 314).
Here the cafeteria is not used as a source of income and the equipment which the college owns is put to its own use. This cafeteria is part of the operation of Pace College. Furnishing of meals to students, faculty and staff on college premises is recognized as entering into their use for educational purposes, nor does it customarily disturb full tax exemption (People ex rel. Seminary of Our Lady of Angels v. Barber, 42 Hun 27, affd. 106 N. Y. 669; Matter of Syracuse *533 Univ., 214 App. Div. 375, 377; People ex rel. Board of Trustees v. Mezger, 98 App. Div. 237, affd. 181 N. Y. 511). Y. M. C. A. cafeterias and dining rooms for members do not impair their tax exemption (People ex rel. Young Men’s Christian Assn. v. Miller, 253 App. Div. 804, affd. 278 N. Y. 651; People ex rel. Christodora Blouse v. Miller, 254 App. Div. 670, affd. 278 N. Y. 652). Hospitals and other eleemosynary, charitable, religious and educational institutions are similarly situated (see People ex rel. Doctors Hosp. v. Sexton, 267 App. Div. 736, affd. 295 N. Y. 553, holding Doctors Hospital to be tax exempt notwithstanding that its facilities are used by physicians for their pecuniary gain).
The reason on account of which part of appellant’s tax exemption has been withdrawn is not that it conducts a cafeteria, but that it does so through Horn & Hardart. We think that Pace College is not the less operating this cafeteria for its own educational purposes within the meaning of the Tax Law for the reason that it is done by a means of a commercial restaurant operator, than was the case when the college farmed out this operation to a professional caterer at a commission of 2% on gross sales of food. This is not renting space to some disassociated enterprise, it is part of the conventional operation of a private school, college, hospital or other benevolent institution.
The particular method adopted by a college for performing this function is not controlling. Educational institutions serve the physical as well as the intellectual and moral needs of their students, faculty and staff. Not all college employees are educators or officials. Stationary engineers, electricians, plumbers, janitors and other servants or independent contractors— to mention but a few — are necessary to educational institutions. So, on occasion, may be an experienced restaurateur. They work for colleges and universities in similar capacities to those in which they work for business or industrial enterprises. Concessions commonly exist upon the premises of educational institutions, such as newspaper stands, book stalls, telephone pay stations and the like. Nor are the profits made by these independent entrepreneurs always negligible. There is no difference in principle between Pace College operate ing this cafeteria by letting it out to a catering firm to be *534 recompensed by a 2% commission on gross sales of food, and licensing Horn & Hardart to conduct it for nothing. In either instance, only the college students, faculty and staff patronize it. It exists for their exclusive benefit in their relationship to Pace College. The mere circumstance that Horn & Hardart is operating as an independent contractor is not enough to disqualify, as the previous method of operation by an outside firm on commission illustrates. It is said that exemption can adhere only if the college operates the cafeteria itself, but the college has to do so through others. It matters not whether this is done by servants who are directly employed by the college, or by an independent contractor such as the previous operator who was paid a commission on gross sales or by an independent contractor such as Horn & Hardart which operates for the benefit of students, faculty and staff receiving as recompense such profit as it is able to make in the operation. The college retains general supervision and control over the operation, which is directed exclusively to the accomplishment of its educational purposes.
The order confirming the withdrawal of $50,000 in tax exemption of this real estate is reversed, with costs, and appellant’s petition for full tax exemption is granted.