█ In the Matter of SCENIC HUDSON LAND TRUST, INC., Respondent, v PAULA SARVIS et al., Appellants. [651 NYS2d 65] —In a hybrid proceeding, pursuant to Real Property Tax Law article 7 and CPLR article 78 to review a determination of the Town of Fishkill Assessor to place the petitioner's property on the real property tax rolls of the Town of Fishkill, the appeal is, by permission, from an order of the Supreme Court, Dutchess County (Palella, J.), dated January 24, 1996, which denied the motion of Paula Sarvis, as Town of Fishkill Assessor, the Town of Fishkill, and the Town of Fishkill Board of Assessment Review for summary judgment dismissing the petition.

Ordered that upon searching the record the order is modified, on the law, by adding a provision thereto granting summary judgment to the petitioner and directing the appellants to remove the property at issue from the Town of Fishkill tax rolls pursuant to Real Property Tax Law § 420-a; as so modified, the order is affirmed, with costs to the petitioner.

The petitioner, Scenic Hudson Land Trust, Inc. (hereinafter Scenic Hudson), is a nonprofit corporation whose stated purposes include, *inter alia,* the "preservation, restoration or enhancement of the natural, ecological, environmental, cultural, scenic, historical or recreational values of the Hudson River or the Hudson River Valley". In September of 1992, Sce-

nic Hudson acquired approximately 850 acres of mountain-top property known as Fishkill Ridge, located in the Town of Fishkill. In May of 1993, it acquired an additional 76 acres (both parcels will hereinafter be referred to collectively as the property). In July of 1993, the State of New York, acting by and through the New York State Office of Parks, Recreation, and Historic Preservation (hereinafter OPRHP), and Scenic Hudson entered into an agreement whereby the property was to be managed and operated by OPRHP as an extension of the Hudson Highlands State Park for a period of 10 years. The agreement provided, *inter alia,* that OPRHP would manage and operate the property in conformance with the purpose of Scenic Hudson and pursuant to a management plan to be devised with Scenic Hudson. The stated consideration was one dollar per year. In furtherance of its stated goals and the agreement, Scenic Hudson conducted and/or paid for numerous projects and activities in planning for and managing the property, including, *inter alia,* the preparation of a preliminary ecological survey and a planning study of the property, the maintenance of approximately seven miles of hiking trails on the property in conjunction with the New York-New Jersey Trail Conference, and the issuance of various press releases and publications to attract attention and promote use of the property by the public.

In February of 1994, Scenic Hudson applied for tax exemptions for the property pursuant to RPTL 420-a. The applications were denied by the appellants Paula Sarvis and Town of Fishkill without explanation. In June of 1994, the appellant Town of Fishkill Board of Assessment Review upheld the denial of the requested exemptions, again without explanation. Accordingly, Scenic Hudson commenced the instant proceeding against the respondents pursuant to RPTL article 7 and CPLR article 78. Scenic Hudson sought, *inter alia,* an order directing the appellants to exempt the property from taxation pursuant to RPTL 420-a. The appellants argued, *inter alia,* that the property was not exempt from taxation because it was not being "used" by Scenic Hudson for exempt purposes pursuant to RPTL 420-a.

By motion dated September 20, 1995, the appellants moved for summary judgment dismissing the petition on the ground that the agreement between Scenic Hudson and New York State to operate the property as an extension of Hudson Highlands State Park, constituted a "lease". Therefore any exemption that might have otherwise been claimed by Scenic Hudson was lost as a result of this lease because New York

State is not, "another qualifying corporation or association," as is required of lessees pursuant to RPTL 420-a (2). Scenic Hudson, characterizing the agreement as a "management agreement," argued that RPTL 420-a (2) was not applicable. By order dated December 5, 1995, the Supreme Court denied the appellants' motion for summary judgment. We now modify.

A motion for summary judgment empowers this Court to "search the record", and grant judgment as a matter of law where warranted, even if the party to whom summary judgment is granted neither moved for such relief in the Supreme Court nor cross-appealed *(see, Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106; *Grimaldi v Pagan,* 135 AD2d 496). Here, upon searching the record, we find that Scenic Hudson is entitled to judgment as a matter of law granting the requested tax exemptions.

RPTL 420-a (1) (a) provides that real property owned by a corporation or association organized or conducted exclusively for charitable or educational purposes or for the moral or mental improvement of men, women, or children, and used exclusively for such purposes shall be exempt from taxation. In *Mohonk Trust v Board of Assessors* (47 NY2d 476), the Court of Appeals reiterated that such exempt purposes included uses of real property "for environmental and conservation purposes which are necessary to the public good and which are open to and enjoyed by the public" *(Mohonk Trust v Board of Assessors, supra,* at 484). Here, as noted by the Supreme Court, it is not disputed that Scenic Hudson is a corporation organized and conducted for purposes recognized as tax exempt under *Mohonk Trust v Board of Assessors (supra; see also, Matter of Adirondack Land Trust v Town of Putnam Assessor,* 203 AD2d 861). Further, on the record before this Court, we hold, as a matter of law, that the property is being "used" for such exempt purposes. Scenic Hudson proffered, *inter alia,* sworn affidavits as to the exempt use of the property sufficient to establish a prima facie case. In response, the respondents submitted only the sworn affidavit of Paula Sarvis the Town of Fishkill Assessor. However, although the appellants' motion for summary judgment was made on the eve of trial, the only allegations proffered by Sarvis were that, on the two days that she visited the property in 1994, she found the trails to be overgrown and unused, the property poorly marked, and the parking lots in a state of disrepair. Even accepting, as we must, these allegations to be true, they do not rebut the prima facie case established by Scenic Hudson. Thus, the issue becomes whether Scenic Hudson's agreement with the State vitiates the exemption. We hold that it does not.

RPTL 420-a (2) provides: "If any portion of such real property is not so used exclusively to carry out thereupon one or more of such [RPTL 420-a (1)] purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation and the remaining portion only shall be exempt; provided, however, that such real property shall be fully exempt from taxation although it or a portion thereof is used (a) for purposes which are exempt pursuant to this section or [various other specified sections of RPTL article 4] by another corporation which owns real property exempt from taxation pursuant to such sections or whose real property if it owned any would be exempt from taxation pursuant to such section[s] * * * and provided further that such real property shall be exempt from taxation only so long as it or a portion thereof, as the case may be, is devoted to such exempt purposes and so long as any moneys paid for such use do not exceed the amount of the carrying, maintenance and depreciation charges of the property or portion thereof, as the case may be". Here, even assuming, arguendo, that the agreement between Scenic Hudson and the State, despite the nominal consideration, may be properly characterized as a lease, the property would still be exempt from taxation pursuant to RPTL 420-a (2).

In *Matter of Pace Coll. v Boyland* (4 NY2d 528), Pace College sought the reinstatement of a tax exemption for a portion of a building that was being used as a school cafeteria. Pace College lost the exemption after it entered into an at-will lease arrangement with Horn and Hardart, a private corporation, to operate the cafeteria. In reinstating the exemption, the Court of Appeals held: "It is true that subdivision 6 of section 4 of the Tax Law [now RPTL 420-a (2)] withholds exemption from educational or other benevolent corporations to the extent that their properties are leased for other purposes [of incorporation of the lessor] (except under certain circumstances to a similarly exempt organization), but that is not this case. This is not an instance where property has been leased for other than the purposes of incorporation of the lessor * * * This cafeteria is not being used by the public paying a revenue to the college as in the case of the restaurant in *Young Women's Christian Assn. v. City of New York* (217 App. Div. 406, affd. 245 N. Y. 562), nor was the property otherwise held as an investment as in *People ex rel. Young Men's Assn. v. Sayles* (32 App. Div. 197, affd. 157 N. Y. 677). The situation is different from that in *People ex rel. Adelphi Coll. v. Wells* (97 App. Div. 312, affd. 180 N. Y. 534), where a college athletic field, which the court said would be exempt if used by the college, was held to be taxable for the reason that it was also 'utilized as a source of pecuniary income

by renting it to outside parties for contests in which the Adelphi College students do not participate and over which the college officers have no control' (97 App. Div. 314)" *(Matter of Pace Coll. v Boyland, supra,* at 532). The *Pace* Court concluded:

"We think that Pace College is not the less operating this cafeteria for its own educational purposes within the meaning of the Tax Law for the reason that it is done by a means of a commercial restaurant operator, than was the case when the college [in a prior arrangement] farmed out this operation to a professional caterer at a commission of 2% on gross of food * * *

"The particular method adopted by the college for performing this function is not controlling * * *

"It is said that the exemption can adhere only if the college operates the cafeteria itself, but the college has to do so through others. It matters not whether this is done by servants who are directly employed by the college, or by an independent contractor * * * The college retains general supervision and control over the operation, which is exclusively to the accomplishment of its educational purposes" *(Matter of Pace Coll. v Boyland, supra,* at 533-534; *see also, Sisters of St. Joseph v City of New York,* 49 NY2d 429, 437-438).

In this case, as in *Matter of Pace Coll. v Boyland (supra),* the property is being "leased" for the purposes of incorporation of the lessor; the property is not being used as an investment, or to generate revenue, or rented at a profit, and Scenic Hudson retains general supervision and control over the property's operation. Thus, here, no less than in *Matter of Pace Coll. v Boyland (supra),* Scenic Hudson is operating the property within the meaning of the Real Property Tax Law. Accordingly, the "lease" between Scenic Hudson and the State of New York does not vitiate the tax exemption for the property to which Scenic Hudson is otherwise entitled. Miller, J. P., Ritter, Goldstein and Florio, JJ., concur.