# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 5
In the Matter of Brookdale
Physicians' Dialysis Associates,
Inc., &c.,
    Respondent,
et al.,
    Petitioner,
        v.
Department of Finance of the City
of New York,
    Appellant.

Adam C. Dembrow, for appellant.
Menachem J. Kastner, for respondent.

RIVERA, J.:

New York Real Property Tax Law (RPTL) § 420-a mandatorily exempts from taxation any real property owned by certain not-for-profit entities and used exclusively for statutorily-enumerated beneficial purposes without financial gain. The statute unambiguously reflects the legislative intent to limit the exemption to those purposes. The exemption also does not apply to property, like that at issue here, which is leased by a

- 1 -

for-profit corporation. Consequently, the subject property is not exempt under RPTL 420-a, and the petition to annul the revocation of the property's standing exemption should have been denied.

I.

RPTL 420-a Not-For-Profit Real Property Mandatory Tax Exemption

New York has a longstanding public policy of exempting real property owned by certain not-for profit entities to encourage and foster legislatively favored, publicly beneficial services and operations (*see Sisters of St. Joseph v City of New York*, 49 NY2d 429, 437-438 [1980]). To that end, RPTL 420-a (1) (a) mandates, in relevant part:

> "Real property owned by a corporation or association organized or conducted exclusively for . . . charitable [or] hospital . . . purposes, or for two or more such purposes, and used exclusively for carrying out thereupon . . . such purposes either by the owning corporation or association. . . or by another such corporation or association. . . shall be exempt from taxation as provided in this section" (RPTL 420-a [1] [a]).

The Court has construed the term "exclusively" in this subsection as meaning "principal or "primary such that purposes and uses merely auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption" (*Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn.*, 25 NY3d 614, 623 [2015] [internal quotation marks and citation omitted]). Regardless of "[w]hether the use of real property to carry out an exempt purpose is characterized . . . as the sole use of the property or . . . as a use reasonably incident to an exempt purpose, it is the actual or physical use of the real property that is determinative under section 420-a (1) (a)" (*Matter of Lackawanna*

*Community Dev. Corp. v Krakowski*, 12 NY3d 578, 582 n [2009]). "Put differently, the determination of whether the property is used exclusively for the statutory purposes depends upon whether its primary use is in furtherance of the permitted purposes" (*Merry-Go-Round Playhouse, Inc. v Assessor of City of Auburn*, 24 NY3d 362, 367-68 [2014]).

To avoid abuse of this mandatory exemption, such property is subject to taxation when the use allows for financial gain or when the entity is a guise or pretense for pecuniary profit. Thus, under RPTL 420-a (1) (b):

> "Real property . . . shall not be exempt if any officer, member or employee of the owning corporation or association shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes, or as proper beneficiaries of its strictly charitable purposes; or if the organization thereof for any such avowed purposes be a guise or pretense for directly or indirectly making any other pecuniary profit for such corporation or association or for any of its members or employees . . . . " (RPTL 420-a [1] [b]).

Further, 420-a (2) provides, in pertinent part, that:

> "If any portion of such real property is not so used exclusively to carry out thereupon one or more of such purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation and the remaining portion only shall be exempt . . . and provided further that such real property shall be exempt from taxation only so long as it or a portion thereof, as the case may be, is devoted to such exempt purposes and so long as any moneys paid for such use do not exceed the amount of the carrying, maintenance and depreciation charges of the property or portion thereof, as the case may be" (RPTL 420-a [2]).

The language in section 420-a (2), "is phrased in the disjunctive; thus, two occurrences could possibly serve as the grounds for disqualification: (a) that the property is leased; or (b) that the property is used by the owner-organization for other than tax-exempt purposes" (*Sisters of St. Joseph*, 49 NY2d at 440; *see also* New York State Dept.

of Taxation and Fin., *Instructions to Assessors: Application for Real Property Tax Exemption for Non-Profit Organizations* [May 3, 2023], *available at* https://www.tax.ny.gov/research/property/assess/manuals/vol4/pt2/sec4_05/rptaxex.htm [last accessed Jan 20, 2024]).[1] In other words, and as relevant to this appeal, under the first ground, if the property is not exclusively used for an exempt purpose and is leased in whole or in part to a nonexempt entity, the leased portion is taxable.

As the text illuminates, and as the Court has previously recognized, one goal of RPTL 420-a (1) (a) and (2) is that the property actually be used for the recognized purposes, without profit (*see Matter of Greater Jamaica Dev. Corp.*, 25 NY3d at 631). Strict adherence to the statutory framework is essential to achieving that legislative goal. Careful application of the exemption also furthers another legislative goal of reversing the erosion of local tax bases by according the statute's reduced tax burden only to those properties used for the benefit of society (*see Matter of American Bible Socy. v Lewisohn*, 40 NY2d 78, 86 [1976] [acknowledging "the evident intention of our Legislature to reduce rather than to enlarge tax exemption" when it amended the RPTL in 1971 and its "articulated desire to stem and to reverse the severe erosion of the local municipal tax base, accompanied by its recognition of the corollary serious predicament of local municipal finances"]; Richard L. Beebe and Stephen J. Harrison, *A Law in Search of a Policy: A History of New York's Real Property Tax Exemption for Non-Profit Organizations*, 9

[1] The Court in *Sisters of St. Joseph* was construing identical language in the predecessor to RPTL 420-a (2)—former RPTL 421—before the RPTL's renumbering (49 NY2d at 437; *see* L 1977, ch 110, § 1).

Fordham Urban LJ 533, 534 [1981] [noting the "erosion of the tax base due to a proliferation of exemptions and exempt properties" and that "many municipalities, particularly several of our largest cities and some of our most rural communities, face excruciating problems as a result of dilution of their tax bases"]).

## II.

### Factual and Procedural History

The Department of Finance of the City of New York (DOF) challenges the annulment of its determination to revoke petitioners' real property tax exemption commencing with the 2014 tax year. Petitioner Samuel and Bertha Schulman Institute for Nursing and Rehabilitation Fund, Inc. (Schulman), is a federally tax-exempt, New York not-for-profit corporation, which fundraises and manages assets in support of the healthcare purpose of non-parties Schulman and Schachne Institute for Nursing and Rehabilitation, Inc., and Brookdale Hospital Medical Center. Starting in 1995, Schulman leased to petitioner Brookdale Physicians' Dialysis Associates, Inc. (Brookdale Dialysis) portions of a building Schulman owns in New York City. Brookdale Dialysis is a for-profit New York corporation that used the building to provide dialysis services for a fee. Under the lease Brookdale Dialysis paid $24,217.08 per month in rent to Schulman and was responsible for any property taxes that might become due during the tenancy.

From 2001-2013, the building was tax exempt under RPTL 420-a. In 2013, DOF retroactively revoked the tax exemption to 1996 on the sole ground that the space had been leased to a for-profit, commercial entity. Supreme Court granted petitioners' CPLR Article

78 petition to annul that determination in 2014, on the ground that DOF failed to show that it considered whether Brookdale Dialysis' "service is reasonably incidental to or in furtherance of the exemption purpose" given that Brookdale Dialysis furthers "the charitable activities of Brookdale Hospital and the Nursing Institute."

Thereafter, DOF assessed taxes on the property for the 2014-2015 tax year. Brookdale Associates sought an exemption based on Supreme Court's 2014 decision. In response, DOF reissued the assessment but continued to scrutinize the standing exemption. In 2016, DOF requested, amongst other items, additional income and expense documentation, including a copy of the then-current lease and information regarding maintenance and utility costs. In 2017, DOF advised petitioners by email that the exemption was revoked. DOF attached the lease and explained that, "[u]nder RPTL Section 420-a, property can be leased to another qualifying [not-for-profit] organization provided that the Income does not exceed the expenses for the leased portion." DOF further explained that, in Supreme Court's 2014 decision, "the for-profit entity was determined to be treated as [a not-for-profit] organization for purposes of the lease." However, after reviewing the information Brookdale Dialysis provided, DOF denied

petitioners' exemption application "based on the fact that the income exceeds the expenses for the property."[2]

Petitioners commenced this hybrid Article 78 proceeding and declaratory judgment action seeking "to annul the DOF determination of revocation, direct DOF to restore the Building to the tax-exempt tax roll and declare that the Building is entitled to tax-exempt status for the 2014/2015 tax year through the tax year in which a decision is rendered." Supreme Court granted the petition.

The Appellate Division affirmed (178 AD3d 443 [1st Dept 2019]). The court determined that Brookdale Dialysis is a for-profit corporation and the rent receipts exceeded the building's maintenance expenses, such that "the non-profit entities received an ostensible financial benefit" but that there was no benefit because Schulman put the profit back into its provider affiliates (*id.* at 445). Nevertheless, the Appellate Division concluded that the building was exempt under RPTL 420-a because Brookdale Dialysis' services are " 'reasonably incident' to Schulman's purpose of funding and supporting its healthcare affiliates" (*id.*, citing *Matter of St. Luke's Hosp. v Boyland*, 12 NY2d 135, 143 [1962]; *Matter of Pace College v Boyland*, 4 NY2d 528, 532-534 [1958]; *Congregation Rabbinical Coll. of Tartikov, Inc. v Town of Ramapo*, 72 AD3d 869, 871 [2d Dept 2010], *affd* 17 NY3d 763 [2011]). The court analogized this case to *Matter of Genesee Hospital v*

---

[2] The monthly rent for the property was $24,217, yielding an annual income of $290,604. And, for 2014 and 2015, the total expenses were $224,081 and $252,021, respectively. For 2016, the prorated amount was $145,768 for eight months, or a monthly average of $18,221.

*Wagner*, where the courts denied a tax exemption to a hospital for that portion of the property leased to physicians for their private practices, but upheld the exemption for areas on the property used for hospital services, including an ambulatory X-ray unit even though radiologists received a commission on the X-rays (*id.*, citing 47 AD2d 37, 46-47 [4th Dept 1975], *affd on op below* 39 NY2d 863 [1976]).

We granted DOF leave to appeal and now reverse. As we discuss, RPTL 420-a does not exempt from taxation real property that is not used in whole or in part for an exempt purpose and is instead leased to a for-profit corporation.

III.

A.

Standard of Review

The Court has previously recognized that an Article 78 proceeding is a proper vehicle for challenging a revocation of a property tax exemption (*Watchtower Bible and Tract Soc. of New York, Inc. v Lewisohn*, 35 NY2d 92, 99 [1974]; *see also Hewlett Assoc. v City of New York*, 57 NY2d 356, 363 [1982] ["[I]f the claim is made that the subject property is wholly exempt from taxation, review by way of collateral proceedings is appropriate"]). "[I]n reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (*Natasha W. v New York State Off. of Children and Family Servs.*, 32 NY3d 982, 984 [2018] [internal quotation marks omitted]). "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (*id.* [internal quotation

marks omitted]). "If the [reviewing] court finds that the determination is supported by a rational basis, [then] it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency" (*id.* [internal quotation marks omitted]).

Well established legal rules control our analysis. First, except for a construction "so literal and narrow that it defeats the exemption's settled purpose," exemption statutes generally "should be construed strictly against the taxpayer" (*Matter of Symphony Space v Tishelman*, 60 NY2d 33, 36 [1983]). Second, "when, as here, a municipality seeks to withdraw a previously granted tax exemption, the municipality bears the burden of proving that the real property is subject to taxation" (*Matter of Lackawanna Community Dev. Corp.*, 12 NY3d at 581). The municipality may meet this burden by showing that the petitioners "were not organized or conducted exclusively for exempt purposes or . . . not used exclusively for carrying out thereupon one or more exempt purposes" (*Matter of Greater Jamaica Dev. Corp.*, 25 NY3d at 624 [emphasis omitted]). The municipality may also meet its burden by showing a change in the law governing the applicable exemption (*see*, *e.g.*, *Matter of Niagara Mohawk Power Corp. v Town of Potsdam Bd. Of Assessors*, 216 AD2d 775, 776 [3d Dept 1995], *lv denied* 87 NY2d 802 [1995]); a change in the property's use (*see e.g. Matter of Miriam Osborn Mem. Home Assn. v Assessor of City of Rye*, 275 AD2d 714, 715 [2d Dept 2000]); or that the exemption "was erroneously awarded in the first instance" (*Matter of Quail Summit, Inc. v Town of Canandaigua*, 55 AD3d 1295, 1297 [4th Dept 2008], *lv denied* 11 NY3d 716 [2009]). In assessing whether the municipality met its "initial burden[,]" we examine both the agency's "revocation letter" and any "additional

proof" submitted in response to the taxpayer's petition challenging the agency's determination (*Matter of Greater Jamaica Dev. Corp.*, 25 NY3d at 624).

Contrary to the dissent's suggestion, we may consider DOF's arguments for why the building is not exempt under RPTL 402-a because the inapplicability of subsection (a) (2) was the ground for revocation and, as petitioners contend (and the dissent agrees), DOF was required to consider the relationship between the Schulman Fund and Brookdale Dialysis. In other words, DOF's cost analysis under (a) (2) also necessarily implicates subsection (a) (1).[3] In an analogous context, we adopted the same approach and gave full consideration to the agency's arguments in *Matter of Greater Jamaica Dev. Corp.*, over the dissent's objection in that case that we improperly considered an affirmation that DOF's counsel lodged in response to the petition and which was part of the record on appeal (*see* 25 NY3d at 624-625; *see also* 639 [Read, J., dissenting]). Moreover, petitioners chose to commence a plenary proceeding challenging the revocation under both RPTL 420-a (1) and (2), they cannot be heard to complain that their chosen theory of the case both affords

---

[3] Notably, although the dissent claims that the only issue before us is whether DOF correctly revoked the exemption based on its income-expense analysis, the dissent does not actually review the agency's determination on that ground.

them the relief they seek and, at the same time, deprives DOF of an opportunity to argue to the contrary.[4]

Consequently, we are free to consider the only question on this appeal, as limited by petitioners' demand for relief: whether petitioners' request to annul DOF's revocation of the exemption commencing with tax year 2014-2015 was properly granted. We note that, contrary to petitioners' implication, Supreme Court's 2014 decision that no evidence supported DOF's consideration of the relationship between Brookdale Dialysis's services and the exempt purpose from the commencement of the lease up to the 2013 revocation, did not prohibit DOF from undertaking a subsequent assessment of the property's RPTL 420-a tax-exempt status. Under that understanding of the parties' dispute and the posture of this appeal, we find no basis to annul DOF's 2017 revocation determination.

B.

RPTL 420-a (1) (a)

The mandatory real property tax exemption in section 420-a (1) (a) is strictly limited to property owned by not-for-profit corporations organized exclusively for "charitable [or] hospital . . . purposes, or for two or more such purposes," and which those owners or another such exempt not-for-profit uses exclusively for one or more of those purposes

_____

[4] Unlike the dissent, we perceive no unfairness to petitioners in the course of this appeal (*see* dissenting op at 6-7). DOF's position has always been that Brookdale Dialysis's for-profit status rendered RPTL 420-a (1) and (2) inapplicable, and that the exemption under (a) (2) applies only when a lessee is a not-for-profit. DOF maintains this same position before us. In response, petitioners contended—and have maintained throughout the course of this litigation—that the property is exempt under RPTL 420-a (1) and that subsection (2) is irrelevant to whether DOF erroneously revoked the exemption.

(RPTL 420-a [1] [a]). Here, it is undisputed that Schulman is a not-for-profit corporation that owns the property and did not reside on the premises or otherwise itself use the building in whole or in part for its exempt fundraising purpose. It is further undisputed that Brookdale Dialysis is a for-profit corporation that had sole occupancy and used the building during the lease term exclusively to perform its for-charge dialysis services. Thus, the property is not tax exempt under RPTL 420-a (1) (a).

## C.

### RPTL 420-a (2)

Real property not used exclusively for the not-for-profit owner's exempt purposes is subject to taxation under RPTL 420-a (2) if the property is leased to a for-profit entity. That is the case here. The remaining provisions of this subsection confirm this interpretation. If, as this additional language commands, the property or any portion devoted to exempt purposes used by *another not-for-profit* is not taxable only so long as any moneys paid for the use do not exceed the property's "carrying, maintenance and depreciation charges," then property used by a *for-profit corporation* for its pecuniary gain certainly is not exempt. The calibrated provisions in RPTL 420-a (2) thus emphasize that the legislature did not intend to exempt property used for profit.[5] DOF met its burden to

---

[5] Given our conclusion that RPTL 420-a (2) subjects to taxation real property leased to a for-profit entity, we need not consider the Appellate Division's conclusion that, despite the "ostensible financial benefit" from the rental payments and that Schulman's rent receipts exceeded the maintenance expenses, there was no benefit chargeable to Schulman because it put the profits back into the hospital and nursing institute. However, we note as a legal matter that the text of RPTL 420-a (2) nowhere refers to how the profit is reinvested and focuses solely on the basic calculation of whether "the moneys paid for such use" exceed

establish that the exemption was erroneously granted by showing that the property was leased and used solely for pecuniary gain by a for-profit corporation. Consequently, RPTL 420-a does not apply on these facts.

IV.

Petitioners' Misinterpretation of RPTL 420-a

Petitioners argue that the property is exempt under RPTL 420-a (1) (a) because the building is used exclusively for its intended charitable purposes in that its dialysis services are vital and necessary to the charitable missions of Schulman and non-parties Brookdale Hospital and the Nursing Institute. However, the exempt purpose at issue here is that of the property owner—Schulman—and its purpose is to raise funds, not to provide dialysis services, or even medical services more generally. It is true that Brookdale Hospital and the Nursing Institute provide health care services, but still, the exemption is for *Schulman's* property. And to the extent Schulman supports the health care efforts of these two entities it does so by fundraising, not by providing direct health care services. If Schulman engaged in its fundraising efforts in the building, then the exemption would apply to any portion so used, but Schulman vacated the premises during Brookdale Dialysis' tenancy. For similar reasons, the Appellate Division erred in concluding that Brookdale Dialysis services are "reasonably incident" to Schulman's "funding and support[ ] of its healthcare affiliates"

_____

the property's "carrying, maintenance and depreciation charges." Further, as a factual matter, Brookdale Dialysis, not Schulman, paid the taxes.

(178 AD3d at 445). This line of reasoning misunderstands the import of our precedent and misapplies RPTL 420-a to the facts of this case.

We address, in turn, each case relied upon below, to illustrate the flaw in the Appellate Division's analysis and why the cases on which it based that analysis are distinguishable. In *Matter of St. Luke's Hospital*, the Court considered a predecessor to RPTL 420-a in the Tax Law in a case that involved a not-for-profit hospital's lease of its private apartments to hospital staff and family (12 NY2d at 140). The Court concluded that renting the apartments for profit was "reasonably incident" to the hospital's major purpose because the rentals facilitated the hospital's objectives of recruiting and training interns, residents and nurses, who were in short supply and who testified that they would have worked elsewhere had the hospital not supplied them with housing (*id.* at 142-143). It was well understood that hospitals customarily provide such housing. Significantly the medical provider was the landlord and leased the property to residential tenants it employed, and the Court accordingly held that this relationship advanced the "hospital purposes" (*id.*).

Here, by contrast, Schulman leased the property, not to its own employees but to a separate for-profit business. Further, under its lease, Brookdale Dialysis was contractually obligated to pay any property taxes that might become due, but, as discussed, nothing it did as a tenant was "reasonably incident" to Schulman's financial management purpose. In short, a hospital's direct lease of housing to personnel and their family as a strategy to recruit and retain a talented medical and administrative staff—as was the case in *Matter of St. Luke's Hospital* (12 NY2d at 140)—is materially different from Schulman's lease to Brookdale Dialysis to provide private-sector dialysis services for-profit. If all that was

necessary was some generalized connection to the purposes of a third party not-for-profit, then a for-profit corporation could set up shop in Schulman's building without affecting the tax-exempt status of the property so long as the corporation provided some marginal benefit to the nonowner entity. That would result in the type of "tax loophole" the Court has rejected (*Sisters of St. Joseph*, 49 NY2d at 441).

*Matter of Pace College v Boyland* (4 NY2d at 528) is similarly distinguishable. There, Pace College converted an office building for educational purposes and set aside space for a cafeteria to be used exclusively by the college's students, faculty and staff (*see id.* at 531). The college contracted with a for-profit restaurant corporation to operate the cafeteria (*see id.*). Under the agreement, no rent was paid to the college, and it would furnish utilities and maintenance for the space, the corporation would pay to the college 2% of the gross receipts monthly and net operating profits at the end of a year to be divided equally between the college and the firm (*id.*). The corporation would also provide personnel and would carry the costs of garbage disposal and liability insurance (*id.*). The Court upheld the exemption because the cafeteria was not used by the public "paying a revenue" to the college, the property had been leased solely for "the purposes of incorporation of the lessor", and the college retained "general supervision and control over the operation," which was "directed exclusively to the accomplishment of its educational purposes" (*id.* at 532, 534). Here, Schulman retained no such control. And, unlike the dialysis services which did not further Schulman's fundraising purpose, the cafeteria in *Matter of Pace College* was a vital and necessary service that ensured students, faculty and staff had food available throughout the day so that they could continue their work, thus

facilitating class attendance and promoting the college's educational mission (*see id.* at 533). Essentially, the cafeteria was a staple of college life and enhanced the college experience.

Reviewing the analytic throughline of these cases, unlike the hospital and college, Schulman is renting property to a "disassociated enterprise" (*id.*). While the apartments and the cafeteria, respectively, were integral to the proper functioning of those not-for-profits and the success of their exempt purposes, it cannot be said that the treatment of renal failure and dysfunction "is part of the conventional operation" of Schulman's charitable fundraising (*id.*).

The Appellate Division's further reliance on *Congregation Rabbinical College of Tartikov, Inc. v Town of Ramapo*, is misplaced (17 NY3d 763 [2011], *affg* 72 AD3d 869 [2d Dept 2010]). There, a religious corporation leased its land to a for-profit corporation to operate a religious summer camp, which paid a licensing fee to the religious corporation that, in turn, used the fee to finance plans for future construction of a religious college on the site (*see Congregation Rabbinical College of Tartikov, Inc.*, 72 AD3d at 870). The Court affirmed a determination by the Appellate Division that the municipality failed to establish that the operation of the camp by the for-profit corporation was inconsistent with the intended principal use of the property as a religious college (*see Congregation Rabbinical College of Tartikov, Inc.*, 17 NY3d at 763). There, unlike here, the not-for-profit owner of the property directly furthered its own religious purpose by leasing the land for a fee used to build the religious college (*id.* at 764). Further, the not-for-profit itself

contractually "retained general supervision and control" over the camp's operations (*id.* at 764-765).

Petitioners argue that Brookdale Dialysis's use of the property as Brookdale Hospital's only hub for ambulatory dialysis treatment is "integral, vital, and necessary to" charitable causes and, more specifically, the Schulman's charitable purpose to "promote the general health of the community." However, petitioners alleged in their petition that Schulman's purpose is to "promote the general health of the community *by providing funds and managing assets* in support of [the Nursing Institute]" (emphasis added). That is at least one step removed from Brookdale Dialysis's business of charging for dialysis services for profit.

As for the generality of the purpose relied upon by petitioners, the Court has previously rejected such expansive objectives proffered in support of a tax-exempt use. For example, in *Matter of Lackawanna Community Dev. Corp.*, the Court held that property leased to a for-profit corporation for the "laudable goal" of "encouraging the development of, or retention of, an industry in the community or area," did not qualify for an exemption (12 NY3d at 582). Similarly, in *Matter of Greater Jamaica Dev. Corp.*, the Court held that parking facilities offered at below-market prices at local retail stores are not "charitable in and of themselves" simply because they facilitate the exempt purpose of economic development by providing a "public benefit" (25 NY3d at 629). There is no logical basis for treating efforts to promote the general health of the community differently for real property tax purposes than efforts to promote economic development. "While these goals may be laudable, they are not charitable" (*id.*). And, as with efforts at economic

development, petitioners' goal is so broad that it could, if permitted to justify an exemption here, justify an exemption for any business activity carried out for-profit so long as such activity could be said to somehow advance public health. We decline to construe RPTL 420-a in this manner, which would render its limitations "meaningless and useless" (*Ivey v State*, 80 NY2d 474, 481 [1992]).

The Appellate Division also analogized Brookdale Dialysis's for-profit purpose to the X-ray services that Genesee Hospital offered in exchange for a commission in *Matter of Genesee Hosp. v Wagner* (47 AD2d 37 [4th Dept 1975], *affd* 39 NY2d 863 [1976]). However, that conclusion overlooks several, legally-significant distinctions between that arrangement and the one between Schulman and Brookdale Dialysis. Before the tax-exempt ambulatory X-ray unit at issue in that case was relocated to an office building connected to and built by the petitioner, Genesee Hospital, a non-profit membership hospital, the unit was located within the hospital, where it shared 7,429 square feet of the 39,000 square foot property with an office and research area for the hospital's chief of surgery and the hospital's complete nutrition clinic (*Matter of Genesee Hosp.*, 76 Misc 2d at 283 [Sup Ct, Monroe County 1973], *revd* 47 AD2d 37 [4th Dept 1975]). The radiologists in charge of the X-ray unit were paid by the hospital and also received a percentage of billings from X-rays taken at the facility—a fact that the City of Rochester contended extinguished the unit's tax exemption (*Matter of Genesee Hosp.*, 47 AD2d at 39). The Appellate Division concluded, and this Court affirmed that these payments to the

radiologists—"common practice in hospitals" at the time—were "directly" related to services rendered "by [the radiologists] to the hospital" (*id.* at 39, 46).

Nothing even remotely similar existed between Schulman and Brookdale Dialysis. Rather, this case is more like *Matter of Greater Jamaica Dev. Corp.*, where we rejected a claim that certain parking facilities were "charitable in and of themselves because they fulfill[ed] the primary purpose of economic development (25 NY3d at 629). "The economic benefit conveyed by below-market rate parking," we reasoned, "inure[d] to the benefit of private enterprise and cannot be said to further any charitable purpose" (*id.*). Similarly, Brookdale Dialysis provides a service for, among others, Brookdale Hospital's patients, but the arrangement also yields a competitive advantage for Brookdale Dialysis over other dialysis providers for its sole pecuniary benefit.

V.

Conclusion

This case features a not-for-profit, corporate landlord that benefited economically, yet did not use the leased property for its exempt purpose or assume any of its carrying costs. The for-profit corporate tenant that operated on the property ran a profitmaking business and, if the exemption applied, would reap the benefits of running a business without paying real property taxes—a benefit the legislature strictly limited to exempt uses

by not-for-profits that do not make money off the property. The RPTL does not treat this competitive-advantage-creating arrangement as tax-exempt.

Accordingly, the order of the Appellate Division should be reversed, with costs, the petition denied and the proceeding dismissed.

CANNATARO, J. (dissenting):

Judicial review of the revocation of a previously granted tax exemption is limited to the grounds invoked by the agency. This longstanding requirement is generally applicable

- 1 -

to the review of government agency actions and is no mere docket management tool. Rather, it goes to the heart of fairness and due process for litigants challenging adverse government actions. Here, the grounds stated by the Department of Finance for revocation of petitioner's tax exemption bear no resemblance to the defense of that determination in the courts below, or to the analysis conducted by the majority today. Because the Department of Finance failed to consider at the agency level whether the property was used exclusively for the owner's charitable purposes, I agree with Supreme Court that the agency conducted an incomplete analysis and therefore failed to meet its burden of establishing that the exemption was properly revoked. I respectfully dissent.

Petitioner, the Samuel and Bertha Schulman Institute for Nursing and Rehabilitation Fund, Inc. (Schulman Fund), is a not-for-profit corporation, organized and operated for the charitable purpose of promoting community health by providing funds and managing assets in support of two other not-for-profit corporations that provide healthcare services: the Schulman and Schachne Institute for Nursing and Rehabilitation (Nursing Institute), a residential healthcare facility, and the Brookdale Hospital Medical Center (Brookdale Hospital). As the majority explains in detail, in 1995, petitioner Brookdale Dialysis, a for-profit corporation, leased the basement and first floor of the building from the Schulman Fund for use as an ambulatory dialysis center to provide dialysis treatment for patients of Brookdale Hospital and the Nursing Institute.

Between 2001 and 2013, respondent New York City Department of Finance (DOF) accorded the building tax-exempt status pursuant to RPTL 420-a. In 2013, DOF attempted to revoke the exemption, retroactive to 1996, on the ground that the building had been

leased to a commercial entity. Petitioners challenged the revocation in a CPLR article 78 proceeding and Supreme Court, in a 2014 order, granted the petition. The court found that DOF failed to meet its burden of proving that the property was ineligible for the exemption as the agency relied solely on Brookdale Dialysis' status as a for-profit corporation without considering whether its services were in furtherance of Brookdale Hospital's exempt purpose. DOF did not appeal Supreme Court's order annulling its determination.

Three years later, after reviewing additional information relating to the lease and expenses for the building, DOF again revoked the tax exemption for the property, setting forth the basis for its determination in an April 4, 2017 email. In what it now concedes was a mistaken interpretation of Supreme Court's 2014 order, DOF proceeded under the assumption that Brookdale Dialysis should be deemed a not-for-profit organization for purposes of the lease. Proceeding under that mistaken presumption, DOF then evaluated petitioner's eligibility for an exemption by comparing the annual rental income to the expenses incurred and revoked the exemption "based on the fact that the income exceeds the expenses for the property."

Having just defended their tax exemption on essentially the same facts three years earlier, petitioners commenced this hybrid CPLR article 78 proceeding and declaratory judgment action, seeking to annul the determination revoking the property's tax-exempt status as well as a declaration that the property was exempt from real property taxes for the tax years at issue. DOF cross-moved to dismiss, now asserting a different basis for the revocation, namely that the subject property was leased to Brookdale Dialysis, a for-profit entity that was "primarily, if not exclusively," using the property for profit-making

purposes.  DOF also repeated its claim that, even if Brookdale Dialysis was considered a not-for-profit corporation, the property was not entitled to exempt status under RPTL 420-a (2) because the Schulman Fund was profiting from the lease.

Supreme Court annulled the determination on the ground that DOF did not meet its burden of establishing that the exemption should be revoked.  The court held that DOF conducted an incomplete analysis by resting its determination solely on the fact that the Schulman Fund profited from the lease.  Rather, it was required to consider whether the property was used exclusively for the Schulman Fund's charitable purposes.

The Appellate Division affirmed, concluding that Supreme Court "correctly determined that the building . . . qualifies for tax-exempt status" (178 AD3d 443, 444 [1st Dept 2019]).  Evaluating the use of the premises, the Court concluded that the provision of dialysis services for patients of Brookdale Hospital and the Nursing Institute was reasonably incident to the Schulman Fund's charitable purpose of providing funding and support for its healthcare-provider affiliates.

" 'Generally, the burden of proof lies with the taxpayer who is seeking to have real property declared tax exempt' " (*Matter of Lackawanna Community Dev. Corp. v Krakowski*, 12 NY3d 578, 581 [2009], quoting *Matter of New York Botanical Garden v Assessors of Town of Washington*, 55 NY2d 328, 334 [1982]).  However, where, as here, "the taxing authority seeks to revoke [an] exemption previously granted, it is the taxing authority that has the burden of establishing that the property is not exempt from taxation" (*Matter of Greater Jamaica Dev. Corp. v New York City Tax Commn.*, 25 NY3d 614, 623 [2015]).  To meet this burden, DOF was required to prove that the building was not being

used exclusively to carry out the Schulman Fund's exempt purposes (*see id.* at 624). Exclusive use in this context includes uses that are "reasonably incident" to the owner's charitable purpose (*id.* at 630; *see Matter of St. Luke's Hosp. v Boyland*, 12 NY2d 135, 143 [1962]). As we have explained, "[t]he question is how the property is used, not whether it is profitable" (*Matter of Adult Home at Erie Sta., Inc. v Assessor & Bd. of Assessment Review of City of Middletown*, 10 NY3d 205, 216 [2008]).

As noted above, DOF revoked the tax exemption based solely on its conclusion that the Schulman Fund was making a profit from its receipt of rental income in excess of the property's carrying costs. That is the specific determination that the Fund commenced this proceeding to challenge as arbitrary and capricious. DOF cannot concede that it improperly analyzed and revoked the exemption under RPTL 402-a (2) but nonetheless argue now that the property should have been analyzed under RPTL 402-a (1) and the exemption revoked because the property was not used exclusively for petitioner's charitable purposes. Indeed, it is well-settled that "[j]udicial review of an administrative determination is limited to the grounds invoked by the agency" (*Matter of Rizzo v New York State Div. of Hous. & Community Renewal*, 6 NY3d 104, 110 [2005] [quotation marks and citation omitted]). "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis" (*Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758 [1991] [internal quotation marks and citations omitted]).

In an attempt to side-step this procedural problem, DOF argues that the basis for its determination includes the record generated in the prior proceeding challenging the 2013

tax-exemption revocation.  However, in that prior proceeding, DOF revoked the exemption on grounds that the property was leased to a commercial entity.  Supreme Court concluded that DOF failed to meet its burden because it relied on Brookdale Dialysis' for-profit status and failed to consider the issue of exclusive use—whether the dialysis services were reasonably incident to or in furtherance of the Schulman Fund's charitable purpose—and DOF did not appeal that order.  Thus, it is of no avail for the majority to accept DOF's argument that the record in the prior proceeding should be used to uphold the later DOF determination under review in this proceeding, where the prior record itself was held to be patently insufficient.

Nor does *Greater Jamaica* support DOF's position.  The Court in that combined RPTL article 7 and CPLR article 78 proceeding considered additional materials submitted by the agency beyond the original revocation letter.  However, in explaining the reason for this departure, the Court expressly noted that "the grounds in the City's revocation letter, *which were plainly sufficient on their own* [were] nonetheless elucidated by the affirmation of the City's Assistant Corporation Counsel detailing how the allegations in the petition established that the parking facilities were not being operated for a charitable purpose" (25 NY3d at 624-625 [emphasis added]).  Thus, although the Court considered the additional submission, it did not purport to allow the agency to set forth entirely different grounds for its revocation.  More to the point, this passage certainly does not support the majority's conclusory assertion that our review encompasses "both the agency's 'revocation letter' and any 'additional proof' submitted" (majority op at 9-10).

DOF's decision to suddenly change tack when challenged in court, and to proceed with a defense of its revocation not previously relied upon, puts the Schulman Fund—and, indeed, all similarly situated nonprofits afforded tax exemptions—in an impossible situation with respect to their disputes with taxing authorities. Going forward, an authority that seeks to revoke a previously-granted (not to mention litigated) tax exemption can assert any grounds for the revocation—or none at all—safe in the knowledge that any justification for revocation that meets the exigencies of the situation will be available for use if the determination is challenged in court. In its zeal to undo a longstanding tax exemption that it finds to be unjustified, the majority fails to explain how fairness or consistency will be served by ignoring the Schulman Fund's procedural rights in order to reach its desired result. As a result of the majority's decision, taxing authorities may now revoke long-standing exemptions and provide the reasons for doing so later—if the non-profit chooses to litigate and find out. This burden is incompatible with due process and our precedent.

In an unavailing effort to achieve consistency with *Greater Jamaica*—where the grounds stated by the agency were "plainly sufficient on their own" to justify the revocation—and our precedent constraining reviewability in article 78 proceedings, the majority recasts both DOF's legal argument and petitioners' requested relief. DOF's present legal argument that Brookdale Dialysis is not entitled to an exemption under RPTL 420-a (1) or (2) is not the functional equivalent of the agency's stated grounds for revocation, as it does not align with the reason given at the agency level (majority op at 11 n 4). The majority also points to the fact that petitioner commenced these proceedings as a joint article 78 and declaratory judgment action, presumably to justify consideration of

information outside the administrative record (majority op at 10-11). However, the declaratory relief sought by petitioners relates solely to the retroactive revocation of their tax exemption. Indeed, even the majority recognizes that the "only question on this appeal" is whether DOF's revocation of the exemption should be annulled—quintessential CPLR article 78 relief (majority op at 11). Thus, despite the majority's attempt to obfuscate the nature of the proceedings in order to reach an issue not properly before us—an attempt which risks shifting to the taxpayer the well-settled burden of proof on the agency to withdraw the exemption—there is no justification for admission of additional proof or consideration of grounds other than those relied on by DOF for the revocation.

Focusing on the basis for revocation invoked by the agency, as we must, I agree with Supreme Court that DOF's determination to revoke the property's tax-exempt status on the stated basis was arbitrary and capricious. As previously stated, an "economic benefit to a charitable organization does not by itself extinguish a tax exemption" (*Matter of Adult Home*, 10 NY3d at 216).

Therefore, I would affirm the Appellate Division order.

Order reversed, with costs, petition denied and proceeding dismissed. Opinion by Judge Rivera. Chief Judge Wilson and Judges Troutman and Brathwaite Nelson concur. Judge Cannataro dissents and votes to affirm in an opinion, in which Judges Garcia and Singas concur. Judge Halligan took no part.

Decided March 21, 2024